Porter, J.
I concur in the opinions which judge Martin has prepared, and as there has not been an uniformity of decision, on the point, which decides the cause as it is now presented to the court, I wish to state the reasons which influence my opinion, respecting the regularity of the proceedings before the court of probates.
It is contended by the plaintiff, that the constitution required, that the record of that court should be preserved in that language *2 in which the constitution of the united states is written.
The general principle seems to be admitted by the defendants. But they urge, that as the proceedings, ordering execution of this will, took place on the 12th of December, 1812, while the government was administered under the schedule; that the provision in the constitution, in regard to the language in which our public records was to be preserved, was not then in operation.
To decide this point, it is necessary to ascertain when the constitution was in force. I think from the moment it was accepted by congress, and Louisiana admitted into the union, and from the same time the territorial government was at end. To adopt the other construction, and consider the judges territorial officers, we must suppose two governments exercising their functions within the limits of this state, at the same time.
If this construction is adopted, then the constitution did not come into operation at once, but spread itself gradually through every department of government, and the territorial system expired, by degrees, as the new government was carried into operation. *3 in the executive, the legislative and the judiciary.
Had the schedule not provided that the officers, under the territorial government,should continue in their respective situations, until others, were appointed. I suppose there can be little doubt but their function would have expired the moment the state became independent and sovereign.
But the schedule, in providing that these officers should remain in the exercise of their respective function, until new ones were appointed, did not preserve those laws, which were contrary to its policy or its provisions; on the contrary, the very section which follows, directing that the judges, governor, and secretary shall remain in office, declares, that the laws not inconsistent with the constitution, shall remain in force until repealed. This is the same thing as if it had said, that laws inconsistent with it were repealed.
It was inconsistent with a provision of that instrument, that judicial proceedings should be carried on in the French language; those which were preserved in that language must, of course be treated as null and void.
I should have had no doubt on this question, *4 were it not for the decisions which have taken place in this court. But on constitutional questions, great as my respect is for those who thought differently, I cannot yield up my own opinion.
As this point was not made in the court below, and the will was not annulled by the irregularity, I am of opinion, that the cause be remanded, with directions to the judge to have it tried on its merits, and that the defendants and appellees pay the costs of this appeal.
Martin, J.
The plaintiffs seek to annul the will of their brother, the testator of the defendants, and if they fail to do so, to set aside a legacy therein contained, to obtain the delivery of the estate.
The district court dismissed the petition, being of opinion, that “the court of probates, of the parish of New-Orleans, is not a court of inferior jurisdiction to this court, (that of the final judicial district.) An appeal from that court lies immediately from that to the court of appeals; and any order, judgment or decree which this court (the district court) may make, declaring any act of the court of probates void, could have no effect, as it could *5 not be so certified to the court of probates, nor could that court be bound to obey or notice it, until the will is declared void by a competent court; this (the district court) can make no order in regard to the estate in the hands of the executor.” The plaintiff appealed.
It appears to me, the probate of a will, in the court of probates, is not conclusive against persons who were not cited and offered the opportunity of contesting it. It is true, no will can be executed in this state, until it be presented to the parish judge, who, after due proof of it, is to order its execution. Civ. Code, 202, art. 153. There cannot be any doubt, that, after the formality has been complied with, any person interested in setting aside the will, may be heard against it, in the district court. In the case of Broutin & al. vs. Vassant, 5 Martin, 169, the will of the defendant’s wife, having been admitted in the court of probates, a suit was brought in that of the first judicial district, where it was actually set aside. It is true, on the appeal, the decree of the district court was reversed, but not on the ground of its want of jurisdiction, which was not contested. I conclude, that *6 the district judge erred, and the judgment ought to be reversed.
The proceeding of the court of probates upon this will are of the 12th of December, 1812, and were recorded in the French language, and the plaintiffs’counsel insists, that they are on this ground, absolutely void, under the 15th section of the 6th article of the constitution. 1 Martin's Digest, 122.
The defendants’ counsel replies, that as the parish judge derived his authority from the 3d section of the schedule, and had no commission from the state, he was not bound to regard, in his proceedings, the provision of the constitution, and cites the case of Dufan & al. vs. Massicot & al. 3 Martin, 289, and that of Rumudez vs. Ibanez, ib. 2.
In W. F. Macarty's case, 2 Martin, 278, which was in the fall of 1812, the superior court of the late territory, the members of which were then acting under the authority derived from the schedule, declared, that they could not recognise any validity or force in any judicial proceeding, couched in any other language than that in which the constitution of the united states is written.
I therefore conclude, that the question is *7 not perfectly settled, and still open for interrogation.
In my view of the constitution, the state borrowed from the territorial government, its officers, and laws not repugnant to the constitution. It did not continue the territorial government, but intended, that the state government should commence as soon as the state was declared by congress to be one of the United States of America. For the schedule itself, after stating that the territorial officers shall continue in the exercise of the duties of their respective departments, expressed what laws are to be in force, all those then in force in the territory, not inconsistent with the constitution. Hence I apprehend the constitution was in full force, as soon as the state became a member of the union.
The court of probates then, which passed on the will, which is the object of the present suit, was then a state court; its judge derived his powers from the constitution, which, as to the language in which the written proceedings of the court were to be promulgated, preserved and conducted, afforded the only legitimate rule of conduct.
*8 On the 12th of December, 1812, the state of Louisiana had been for seven months a member of the union. The executive and legislative departments had been filled by persons elected under the constitution. A session of the legislative body had been held. It is true, the judges had not received any new commission; but the territorial government existed no longer; that of the state had taken its place, and every part of it was to be administered according to the provisions of the constitution.
I therefore conclude, that the proceedings of the court of probates, of the parish and city of New-Orleans, on the will, which is the object of this suit, having been promulgated, preserved and conducted in the French language, cannot be considered by us as having any force or validity.
As the objection which I have just now examined, appears not to have been made in the district court, I think it our duty to remand the cause, with directions to the judge to hear and determine the cause on its merits. The costs of this appeal ought to be borne by the defendants and appellees.